**Barbara McCORD–SHELL, Administrator of the Estate of Lamont Lewis Moss, Deceased; and Dennis Nichols, Administrator of the Estate of Sheila Nichols–Mangun, Deceased, Plaintiffs,**

v.

**VOLKSWAGEN OF AMERICA, INC., a foreign corporation, Defendant.**

No. 89 C 00012.

United States District Court,
N.D. Illinois, E.D.

April 16, 1990.

Steven McMullen, Harvey L. Walner & Associates, Ltd., Chicago, Ill., for plaintiffs.

James K. Toohey and Roxanne A. Ablan, Ross & Hardies, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case involves two wrongful death actions brought against the defendant,

---

Volkswagen of America, Inc. ("Volkswagen"), by the plaintiffs, Barbara McCord–Shell, administrator of the estate of Lamont Lewis Moss, and Dennis Nichols, administrator of the estate of Sheila Nichols–Mangun. According to the amended complaint, on September 24, 1988, Lamont Lewis Moss was driving a 1980 Volkswagen Scirocco eastbound on the Eisenhower Expressway accompanied by Sheila Nichols–Mangun. The plaintiffs allege that the Scirocco was rear-ended by another car and that the Scirocco then "burst into flames, resulting in the occupants burning to death." Amended Complaint, ¶ 5, Counts I–IV. The plaintiffs claim that the fire was caused by an unreasonably dangerous condition in the Scirocco's fuel tank. Amended Complaint, ¶ 4(a)-(f), Counts I–IV. Volkswagen has moved for summary judgment. For the following reasons, we grant Volkswagen's motion as to the claims brought on behalf of the estate of Moss and deny the motion with respect to the claims brought on behalf of the estate of Nichols–Mangun.

## BACKGROUND

Before turning to the merits of the motion, we will set forth relevant aspects of the procedural history of this case bearing on our disposition of the motion for summary judgment. Volkswagen filed its motion for summary judgment at a time when there was a considerable amount of outstanding discovery and Volkswagen was having difficulty in securing the plaintiffs' compliance with the discovery schedule we had originally set. Volkswagen's motion was accordingly predicated on an alleged lack of any substantive evidence having been offered by the plaintiffs to support their claim. The plaintiffs' response to Volkswagen's motion for summary judgment was originally due on October 23, 1989. The plaintiffs then sought leave for a 35 day extension of time in which to take the deposition of one of their medical experts Dr. Jorge Sfier, which we granted. The deposition, however, was never taken and instead the plaintiff submitted two af

fidavits from Dr. Sfier, sworn to by the doctor on August 31, 1989, and one supplemental affidavit, sworn to on September 28, 1989—all well prior to the day the plaintiffs requested more time. The plaintiff's did make use of the additional time, however, in securing an affidavit from Roy Jelinek concerning the issue of the alleged design defect in the Scirocco.

During the briefing period for the motion for summary judgment, the discovery disputes were the subject of several proceedings before this Court and Magistrate Lefkow. Yet, no stay of the motion for summary judgment was sought pending resolution of those matters. The discovery proceedings then resulted in a recommendation from the Magistrate that partial discovery sanctions be imposed against the plaintiffs, although the dismissal sought by Volkswagen was denied. The Magistrate then set a new discovery schedule. At the most recent status hearing, however, the plaintiffs took the position that they wanted a ruling on Volkswagen's motion for summary judgment before proceeding to engage in obtaining further discovery of expert witness opinion in their case. In essence, they clearly indicated that they wanted to stand on their submissions in response to Volkswagen's motion.[1]

## DISCUSSION

Volkswagen has sought summary judgment on the grounds that plaintiffs have failed sufficiently to establish the existence of two elements essential to their claims and on which they bear the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Volkswagen contends that the plaintiffs have offered no supporting evidence on the issues of proximate cause and conscious pain and suffering. Mindful that we must draw all inferences from the evidence presented on summary judgment in the light most favorable to the plaintiffs, we agree that, regarding Lamont Moss, the plaintiffs have failed to put forward any

1. In their response, the plaintiffs say as much: "[P]laintiffs' position adequately [sic] supported

in the Statement of Material Facts and exhibits." Resp. at 2.

positive, competent, or relevant evidence from which a favorable inference may be drawn concerning these two elements. Regarding Sheila Nichols, however, we find that the plaintiff has sufficiently created a genuine issue of material fact.

### I. Dr. Sfier's Affidavits

Volkswagen first asserts that the plaintiffs' evidence fails to establish an inference that either of the decedents suffered and died as a result of the fire that broke out after the collision. On this issue, the plaintiffs rely almost exclusively on the affidavit testimony of Dr. Jorge Sfier. The plaintiffs claim that these affidavits establish an issue of fact to the effect that both plaintiffs' decedents suffered and died of inhalation asphyxia caused by breathing lethal levels of carbon monoxide produced by the fire.

We find the affidavits of Dr. Sfier wanting in several respects as to both decedents, and ultimately insufficient so as to create a genuine issue of material fact in favor of the estate of Moss. Dr. Sfier's "Supplemental Report and Affidavit," dated September 28, 1989, was neither signed nor sworn to by the doctor. Accordingly, we strike that affidavit as inadmissible. Next, the August 31, 1989 affidavits provide almost nothing regarding Dr. Sfier's competence to testify to the matters contained in them. The affidavit merely states that Dr. Sfier is a licensed physician practicing in Chicago. No practice area or place of employment is given. In fact, the affidavit does not even offer an address for the doctor. On this point, however, we will give the plaintiffs the benefit of the doubt at this stage as to Dr. Sfier's qualifications as an expert to testify to the matters in his affidavit.

We next observe that the plaintiffs contend on summary judgment that the evidence, gleaned from Dr. Sfier's affidavits, shows that both decedents died from inhaling lethal amounts of carbon monoxide. In their complaint, however, the plaintiffs allege that both decedents burned to death. Unrefuted deposition testimony, given by Dr. Edmund R. Donoghue, the Deputy Chief Medical Examiner for Cook County, suggests that there is a substantial difference between a situation in which a person actually burns to death through exposure to flames where there is an abundant supply of oxygen and a situation in which a person dies of asphyxiation through exposure to an abundance of carbon monoxide caused by combustion and an increasing lack of oxygen, and where the person may or may not be directly exposed to flames. *See* Donoghue Dep. at 22–32. Here too, however, we will give the plaintiffs the benefit of the doubt and consider the plaintiffs' allegation that the decedents burned to death as embracing either situation.

Dr. Sfier also bases neither of his opinions as to the cause of decedents' deaths upon a reasonable degree of medical certainty. Lacking that foundation, the doctor's opinion is normally inadmissible under Federal Rule of Evidence 702 and 703. Nevertheless, we are willing to infer for the purposes of summary judgment that this foundation problem is one that may be cured.[2] We shall therefore consider the substantive merit of Dr. Sfier's affidavits as they relate to the issues of proximate cause and conscious pain and suffering of each of the decedents.

### II. Lamont Moss

■ Dr. Sfier's affidavit fails to establish an issue of material fact concerning the proximate cause of Moss' death and his conscious pain and suffering. Nowhere in his affidavit concerning Moss does Dr. Sfier affirmatively state that he believes that the cause or a contributing cause of Moss' death was either the fire or the asphyxiation. On that issue Dr. Sfeir opines only that "it is possible that asphyxia made a

---

2. We additionally note that the parties and doctors from the coroner's office discussed the issue whether the burning of the automobile was a proximate cause of the decedents' deaths in terms of the amount of potentially lethal carbon monoxide (CO) found in the decedents blood, measured as carboxyhemoglobin. Curiously, however, Dr. Sfier's affidavit regarding Sheila Magnun–Nichols repeatedly refers to her inhalation of supposedly excessive amounts of "$CO_2$" (carbon *dioxide*) resulting in asphyxiation and death. We shall treat this, too, as a technical deficiency and presume that Dr. Sfier intended "CO."

contribution to his death." That assertion hardly amounts to positive proof, but by its own terms is the embodiment of speculation. Moreover, Dr. Sfier indicated that he believed that the possibility of asphyxiation as a cause of death would arise only "if there was no severance of the spine." He acknowledges that the record does not indicate whether or not Moss' spine actually was severed. Thus, Dr. Sfier's testimony reveals that his speculation is further lacking in foundation. In the absence of evidence of the predicate condition underlying Dr. Sfier's conjecture, that conjecture must be regarded as describing only a hypothetical circumstance.[3]

In addition to all of this speculation, Dr. Sfier ultimately concludes that even if "the spinal cord was not severed, without asphyxia from the fumes it is possible but remote this driver could have survived the accident." We regard this conclusion as further indication that even Dr. Sfier agreed with the opinions of the two doctors from the Cook County Medical Examiner's office that Moss died instantaneously having dislocated a vertebra as a result of the collision forces of the accident and that he was not conscious and suffering pain prior to his death.

Because the plaintiffs have failed to adduce any affirmative medical opinion that Moss' cause of death was related to the fire and that Moss experienced conscious pain and suffering because of the fire, we grant summary judgment in Volkswagen's favor as to the claim brought by the Estate of Moss.

### III.  Sheila Nichols–Mangun

■ We find that Dr. Sfier's affidavit testimony concerning Nichols–Mangun sufficiently raises an issue of fact as to the presently contested elements of proximate cause and conscious pain and suffering. It is not disputed that Nichols died from asphyxia. The reason for the asphyxia, however, is clearly in dispute. Unlike the opinion offered regarding the cause of Moss' death, Dr. Sfier's opinion as to the cause of Nichols–Mangun' asphyxia and death affirmatively concludes that

> The likelihood of her problem was a large concentration of [CO] that caused her to stop breathing, lose consciousness and made her unable to move out of the car. . . . She probably died as a result of heat and excessive [CO] in the resulting accident, combustion and flames. . . . This patient died of inhalation asphyxia in the accident.

The medical examiners, by contrast, ultimately concluded that Nichols–Mangun' asphyxia was due to chest compression, presumably unrelated to the fire that broke out after the initial collision.

Notwithstanding this divergence of medical opinion, Volkswagen challenges the probativeness of Dr. Sfier's opinion on the ground that it lacks a sound medical evidentiary basis and rests purely on speculation. Volkswagen contends that Dr. Sfier has failed to offer any evidence that might support his conclusion insofar as it relies on the fact that Nichols had inhaled a lethal concentration of carbon monoxide. We reject that contention. While we agree that, on the record before us, the foundation for Dr. Sfier's opinion is by no means substantial, and from a trier of fact's perspective probably would be far from convincing, nevertheless it is sufficient to overcome summary judgment.

We observe that, even for the medical examiners, evidence on the question of the precise cause of Nichols–Mangun' asphyxiation presented a puzzle. Weighing against a finding of asphyxia resulting from carbon monoxide inhalation, a physical examination of Nichols–Mangun' body revealed no evidence of soot either on her tongue, larynx, trachea, or bronchi, which would indicate that she had breathed the

---

**3.** At one point in their response, the plaintiffs appear to suggest that they intend to conduct further discovery to challenge the validity of the coroner's conclusions. To the extent, if any, the plaintiffs believe that further discovery might have revealed the answer to the question whether or not Moss's spine was in fact severed, they have relinquished that opportunity. "A claim that further discovery or a trial might reveal facts which the plaintiff is currently unaware of is insufficient to defeat [a] motion for summary judgment." *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121 (5th Cir.1988).

products of combustion. In addition, a Co-aximeter test, which measures the level of carbon monoxide in the blood, showed a non-lethal carbon monoxide level of 6%, which according to unrefuted testimony is a level that is not independently lethal. On the other hand, weighing against a finding of chest compression, a physical examination of Nichols–Mangun' body revealed no evidence of injury to the thorax or abdomen that would explain her inability to breathe. Based on the laboratory findings, the medical examiners did not choose one cause or the other, but determined that an examination of the vehicle was necessary in ultimately forming their medical opinion that chest compression was the cause of Nichols–Mangun's asphyxia.[4] Thus, their conclusion as to the cause of asphyxiation came down to a relative weighing of the laboratory findings and speculation concerning the role non-medical physical evidence may have played.

Because of the evident inconclusiveness of the laboratory findings, we believe that the determination of the cause of asphyxiation may be subject to a reasonable difference of medical opinion. In his affidavit, Dr. Sfier stated that he did not believe that Nichols–Mangun' carbon monoxide blood level concentration was 6%, clearly suggesting that he believed that the concentration was greater than 6%. Even ignoring the reasons for that statement offered by Dr. Sfier in the stricken supplemental affidavit,[5] Dr. Donoghue provided deposition testimony indicating that the results of the Co-aximeter test did not necessarily conclu-

sively establish that Nichols–Mangun' blood carbon monoxide level was 6% at the time of her death. Dr. Donoghue explained that the severe charring of a body may break down the "carboxyhemoglobin complexion," therefore reducing the level of measurable carbon monoxide at the time the test was taken. Donoghue Dep. at 30–31. For summary judgment purposes, we find that testimony provides a sufficient basis for Dr. Sfier's opinion that Mangun–Nichol's carbon monoxide level was higher. Furthermore, it is undisputed that the test that was conducted revealed that the carbon monoxide concentration in Nichols–Mangun blood was at least 6%. Although that percentage may not in itself be lethal, it suggests that at least some amount of carbon monoxide inhalation occurred prior to death. Since we have no unrefuted basis for concluding that a 6% level is otherwise normal, drawing inferences in the light most favorable to the plaintiff, the 6% level raises an issue of fact that suggests Nichols–Mangun may have been conscious and inhaling fumes for at least a very brief period of time after the collision and during the ensuing fire.[6]

Volkswagen nevertheless challenges all of this claiming that the lack of physical evidence of soot in the airways, and Dr. Sfier's failure to state precisely what level of carbon monoxide Nichols–Mangun inhaled fails to positively establish an inference that the fire and fumes were a proximate cause of her death or that she was conscious and suffered pain. We observe, however, that it is by the same reasoning

---

4. The medical examiners' deposition testimony does not expressly reveal how the examination of the vehicle assisted them in determining the cause of death. Based on the implications of their testimony, we presume that their examination of the vehicle showed that the passenger compartment from which Magnun–Nichols was removed had been compacted by the collision into a very small space. Absent direct evidence on the question, however, we do not rely in any way on the correctness of that presumption.

5. In his supplemental affidavit, Dr. Sfier posits that because the blood gas studies were not performed until approximately 27 hours after the deaths, the results of the blood gas studies "are unreliable for the purposes of ruling out high concentration of carbon monoxide hemo-

globin and inhalation asphyxia [sic] as the cause of death, as carbon monoxide levels would dissipate over time."

6. We reject plaintiffs' "suggestion" that the "burn fractures" to the right arm and right wrist, recorded in the Magnun–Nichols' coroner's autopsy protocol "could well have been caused by this passenger reaching for the door to excape [sic] from the burning vehicle and produce some evidence of conscious pain and suffering to be detailed at trial." Resp. at 3. Dr. Sfier offers no such opinion, and the only other medical testimony regarding "burn fractures" indicates that they were caused after her death by the ensuing fire. See Arruza Dep. at 19–20 and 57.

that Dr. Sfier disagrees with the conclusion reached by the medical examiners, since there was no physical evidence of any injury to Nichols–Mangun' thorax or abdomen that would provide a basis for concluding the cause of asphyxiation was due to chest compression. And presumably he found little of significance in reviewing the pictures of the automobile taken after the accident. Apparently Dr. Sfier gave different weight to the significance of the various physical findings and evidence. Although Volkswagen has offered to provide additional affidavits refuting the basis for Dr. Sfier's opinion, we believe such matters are for the finder of fact ultimately to resolve.

## CONCLUSION

We grant summary judgment in favor of Volkswagen on the claims brought on behalf of the estate of Lamont Moss. We deny Volkswagen's motion for summary judgment with respect to the claims brought on behalf of the estate of Sheila Nichols–Mangun. It is so ordered.